604 F.2d 4
 102 L.R.R.M. (BNA) 2263, 86 Lab.Cas. P 11,446
 CA 79-2916 LODGE 743, INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS, AFL-CIO,
Plaintiff-Appellee,
v.
UNITED AIRCRAFT CORPORATION, Defendant-Appellant (two cases).
 No. 826, Docket 79-7034.
 United States Court of Appeals,
Second Circuit.
 Argued March 28, 1979.
Decided July 26, 1979.
 
 Mozart G. Ratner, Washington, D. C. (Plato E. Papps, Washington, D. C., of counsel), for plaintiffs-appellees, Lodges 743 and 1746.
 Joseph C. Wells, Washington, D. C., for defendant-appellant, United Aircraft Corp.
 Before MOORE, FRIENDLY and MESKILL, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 In the summer of 1960, Lodges 743 and 1746 of the International Association of Machinists & Aerospace Workers (the "Union"), conducted a strike at various plants of United Aircraft Corporation ("United") in its Hamilton Standard Division and its Pratt & Whitney Aircraft Division. The strike was finally settled and written agreements were entered into, which will be referred to as the Strike Settlement Agreements. The only phase of the Agreements here involved is that relating to the procedure, and the circumstances, under which certain strikers would be recalled to jobs.
 
 
 2
 The Agreements provided for recalling the strikers in three phases. Under Phase 1, strikers would be returned to their prestrike jobs (I. e., same job code, department and shift) if the jobs were available at the end of the strike. If a striker's prestrike job was not available, under Phase 2 he would then be recalled to certain other jobs then available. Finally, under Phase 3 registered strikers not recalled up to that point would be put on a preferred hiring list and placed in jobs which developed before December 31, 1960, the expiration date of the Agreements, before new employees were hired. Despite careful draftsmanship, as not too infrequently happens, a controversy arose as to the practical application of the recall provisions. The Union brought suit against United, which resulted in a lengthy trial. The facts as found and the conclusions of law therefrom are set forth in the district court's opinion of March 20, 1969, 299 F.Supp. 877, 879-936 (D.C.Conn.1969).
 
 
 3
 In addition to the Union's suit against United, the Union filed unfair labor charges with the National Labor Relations Board ("NLRB") involving virtually the same recall disputes. The Trial Examiner's ruling was with minor exceptions similar to that of the district court. The appeals by United and the Union from the district court's judgment and by the NLRB for enforcement and by the Union for review of the Board's decision were argued together and were dealt with in this court's opinion reported at 534 F.2d 422 (2d Cir. 1975).
 
 
 4
 We affirmed almost all of the district court's conclusions but remanded the case for further proceedings regarding the transfer and promotion of junior active employees and the award of prejudgment interest.[1] The latter issue is not involved in the present appeal. As to the NLRB petition, we enforced the Board's order in part and remanded the case to the Board for further proceedings.
 
 
 5
 The proceedings on remand to the trial court took the form of the Union's Motion to Confirm Judgment Regarding Promotions on Remand, a Stipulation of Facts, and a hearing on the motion on March 3, 1978. Chief Judge Clarie's opinion granting the motion was filed on December 13, 1978, and this appeal followed. Thus, after almost 20 years the case, practically equalling in time the sleep of Rip Van Winkle, comes before us for a hopefully final decision.
 
 
 6
 The issue before us on this appeal was succinctly stated by the trial judge as follows:
 
 
 7
 "(1) whether transfers at the Hamilton Standard Division and transfers and promotions at the Pratt & Whitney Aircraft Division violated the Strike Settlement Agreements. . . ."
 
 
 8
 Because the parties agreed, upon reviewing the facts after we remanded the case, that no violations of the Agreements occurred in the transfers category, the trial judge had to rule only on the propriety of 45 promotions in both divisions of United. As to these 45 promotions, we had not realized in 1975 that in large industrial plants the passage of 15 years is tantamount to a period of time beyond which "the memory of man runneth not to the contrary" when we said:
 
 
 9
 "With regard to the 45 promotions found by the district court to have breached the Agreement, the district court should inquire into the reasons for these promotions. If they were made simply as a matter of personnel policy and not as a production adjustment, then the promotions were indeed breaches of the Agreement, as the district court found. If on the other hand, the promotions were necessary production adjustments caused by post-strike production conditions, these promotions did not violate the Agreements." 534 F.2d at 444.
 
 
 10
 But what we did not explain was what proof would suffice to establish that United had, or had not, made these promotions for post-strike production adjustments.
 
 
 11
 The district court envisioned the problem quite correctly saying: "(I)sn't it incumbent upon this Court now to make a finding as to each of these individuals". The court and counsel attempted to complete this program. As to several of the individuals involved, United conceded that the promotions had disadvantaged senior, unrecalled strikers. Thus, the court's ultimate findings applied to a group of 38 strikers who had not been recalled.
 
 
 12
 The facts with respect to this group of 38 fall into the following general pattern. United promoted active employees into vacant positions which a senior striker could have filled and left unfilled the position vacated by the promoted employee. In some cases these promotions had ripple effects, I.e., a position vacated due to a promotion was filled by promoting another active employee but then his vacated position was not filled. Thus, for each of these promotions, United left some position vacant until after the end of the recall period specified in the Agreements.
 
 
 13
 United argued that its failure to fill the positions vacated by active employees who were promoted to a position for which a senior striker was eligible was adequate proof that the promotions were made to correct production imbalances. In other words, the only reason that United would leave a position vacant would be that there was not enough work to keep a person in that position occupied because of the problems in adjusting production flows after the strike.
 
 
 14
 The documentary evidence was inconclusive. A score or more of "Change of Status" slips were introduced but they contributed nothing to the solution of the problem. The entries were made by many unidentified persons and were no more informative than "This employee qualifies for Code 470.6, Grade 8" (Ex. 87A), or "To fill vacancy as Test Mechanic" (Ex. 38A).
 
 
 15
 Naturally the persons charged with the entries describing the changes would not have been versed in the legal construction of the Strike Settlement Agreements. As United's counsel said "there would have been no reason in 1960 to make any such statement (that the promotion was a production adjustment made to avoid layoffs) at all . . . it is not a document which is designed to do that (state reasons for promotion)." (App. 214). And with the wisdom of hindsight he said "Of course, in 1960, if we knew we were going to be in court today, we would have made a lot of notes". (App. 214).
 
 
 16
 During the protracted argument between court and counsel, the court brought out the problem and inferentially the answer thereto:
 
 
 17
 "THE COURT: How are we going to get those reasons, unless your Personnel Department has put something on the record? These were unusual times. Here the Company had a written agreement with the employees, that they would do certain things about rehiring from that list, for a very limited, stated period.
 
 
 18
 Now, wasn't the company, wasn't it incumbent upon the company, weren't they obligated when they were going to assume that they had the right to make these transfers, if that were the reason, didn't they have an obligation to put into the record somewhere didn't they have to put the name of the man, Joe Doakes, that he was entitled to this job, but they were transferring this other man because they would have to lay him off otherwise they didn't have to make it that specific but wasn't it incumbent upon them to make some record, to avoid a complete frustration of this strike settlement agreement?"
 
 
 19
 Although the court speaks of transfers, its thought is equally applicable to the promotions category.
 
 
 20
 With respect to the 38 promotions at issue here, the district court found:
 
 
 21
 "that the challenged promotions in question were primarily attributable to the defendant's normal personnel policies and were not attributable to an imbalance in production; as so carried out, this conduct violated the Strike Settlement Agreements."
 
 
 22
 United was a party to the Strike Settlement Agreements. Although under ordinary circumstances it would be unusual to attribute an employee's promotion to a specific reason, particularly as technical a reason as "To relieve production imbalance", the situation between August and December 31, 1960 was not an ordinary one. In deciding between two parties, both of whom lack proof to substantiate their positions, it is equitable to require the party which had employee promotions under its control to bear the burden of proof or, more accurately, to suffer the consequences of the lack thereof. See NLRB v. Great Dane Trailers, Inc., 388 U.S. 26, 34, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967).
 
 
 23
 Judge Clarie properly interpreted our directions on remand and his findings of fact are not clearly erroneous. The judgment of the District Court, therefore, is affirmed.
 
 
 
 [1]
 Judge Clarie affirmed his previous award of pre-judgment interest from March 20, 1969